1
2
3
4
5
6
7

UNITED STATES DISTRICT COURT

8

NORTHERN DISTRICT OF CALIFORNIA

9

10    SIERRA CLUB, et al.,

Case No. 19-cv-03263-RS

            Plaintiffs,

11

12        v.

**ORDER GRANTING
MOTION TO TRANSFER**

13    SCOTT ANGELLE, et al.,

14            Defendants.

15                        **I.  INTRODUCTION**

16        In May 2019, defendants Department of the Interior ("DOI") and Bureau of Safety and

17    Environmental Enforcement ("BSEE") issued a final rule that revised existing regulations for well

18    control and blowout preventer systems used in offshore oil and gas drilling. Plaintiffs are eight

19    environmental advocacy groups challenging that rule under the Administrative Procedure Act

20    ("APA"), Outer Continental Shelf Lands Act ("OCSLA"), and National Environmental Policy Act

21    ("NEPA"). Defendants now request, pursuant to 28 U.S.C. § 1404(a), that the case be transferred

22    to the Eastern District of Louisiana or alternatively to the District of Columbia. Pursuant to Civil

23    Local Rule 7-1(b), the motion is suitable for disposition without oral argument, and the hearing set

24    for December 5, 2019 is vacated. For the reasons set forth below, the motion is granted, and the

25    case is transferred to the Eastern District of Louisiana.

26                        **II.  BACKGROUND**

27        Defendant BSEE is the agency to which the DOI has delegated authority to regulate oil and

28    gas exploration, development, and production operations on the Outer Continental Shelf ("OCS"),

United States District Court
Northern District of California

United States District Court
Northern District of California

1   which extends from the outer boundary of state waters to the outer boundary of federal waters.

2   After the 2010 Deepwater Horizon disaster, the BSEE initiated rulemaking focused on the

3   prevention of future blowouts. Following a public process, which incorporated the expertise of

4   several government and academic panels, the BSEE promulgated a final rule clarifying and

5   strengthening existing well control regulations in order to avoid future disasters. *See* Oil and Gas

6   and Sulfur Operations in the Outer Continental Shelf—Blowout Preventer Systems and Well

7   Control, 81 Fed. Reg. 25,888 (Apr. 29, 2016) (codified at 30 C.F.R. § 250) ("2016 Rule").

8         Only a year later, newly elected President Trump issued an Executive Order directing the

9   BSEE, via the DOI, to revise the 2016 Rule to be consistent with the President's new "America-

10  First Offshore Energy Strategy." Pursuant to that Order, the BSEE again initiated a rulemaking

11  process and identified revisions to the 2016 Rule that would eliminate regulations blocking

12  expanded offshore oil and gas development. In May 2019, the BSEE published a final rule

13  revising 71 of the 2016 Rule's provisions. *See* Oil and Gas and Sulfur Operations in the Outer

14  Continental Shelf—Blowout Preventer Systems and Well Control Revisions, 84 Fed. Reg. 21,908

15  (May 15, 2019) (codified at 30 C.F.R. § 250) ("2019 Rule").

16        Plaintiffs are eight environmental advocacy groups with their principal places of business

17  spread throughout the country: Sierra Club (Oakland, California), Natural Resources Defense

18  Council ("NRDC") (New York, New York), Healthy Gulf (New Orleans, Louisiana), Center for

19  Biological Diversity ("CBD") (Tucson, Arizona), Defenders of Wildlife ("Defenders")

20  (Washington, D.C.), Friends of the Earth (Washington, D.C.), North Carolina Coastal Federation

21  (Newport, North Carolina), and South Carolina Conservation League (Charleston, South

22  Carolina). In June 2019, they sued the BSEE, the DOI, and both agencies' directors in their

23  official capacities, averring that the 2019 Rule violates the APA, the OCSLA, and the NEPA. The

24  American Petroleum Institute was granted leave to intervene as a defendant after plaintiffs filed a

25  statement of non-opposition. Defendants now move for the case to be transferred to the Eastern

26  District of Louisiana, or alternatively to the District of Columbia.

27

28

### III.  LEGAL STANDARD

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." 28 U.S.C. § 1404(a). If the action could have been brought in the target district, *Hoffman v. Blaski*, 363 U.S. 335, 343–44 (1960), courts then weigh a variety of factors including:

> (1) where the relevant agreements were negotiated and executed, (2) which state is most familiar with governing law, (3) the plaintiff's choice of forum, (4) the parties' contacts with each forum, (5) the parties' contacts with each forum that are related to the cause of action, (6) the relative costs of litigating in each forum, (7) the availability of compulsory process in each forum, and (8) access to evidence in each forum.

*See Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 498–99 (9th Cir. 2000). Consistent with the above, courts in this district have articulated additional factors such as feasibility of consolidation with other claims, local interest in the controversy, and relative court congestion. *See Vu v. Ortho-McNeil Pharm., Inc.*, 602 F.Supp.2d 1151, 1156 (N.D. Cal. 2009). Whether to transfer is generally left to the discretion of the district court. *See Ventress v. Japan Airlines*, 486 F.3d 1111, 1118 (9th Cir. 2007); *Commodity Futures Trading Comm'n v. Savage*, 611 F.2d 270, 279 (9th Cir. 1979) ("Weighing of the factors for and against transfer involves subtle considerations and is best left to the discretion of the trial judge.").

### IV.  DISCUSSION

The parties do not dispute that the Northern District of California, the Eastern District of Louisiana, and the District of Columbia are all proper venues for this case. 28 U.S.C. § 1391. Thus, whether to transfer the case is a question of convenience, left to the discretion of the transferor court and to be evaluated holistically. In this case, several of the *Jones* factors do not significantly factor into the analysis. There are no "relevant agreements" at issue. All the plaintiffs' claims arise under federal law, so state familiarity with governing law is also moot. The costs of litigating in each forum are similar. *Cf. Ecological Rights Found. v. U.S. Envtl. Prot.*

*Agency*, No. 19-cv-04242, 2019 WL 5295124, at *4 (N.D. Cal. Oct. 18, 2019) ("There is simply no avoiding the fact that one party will have to bear the costs of attorney travel, *pro hac vice* admission, and the like."). The availability of compulsory process in each forum is identical. Finally, as all parties agree, the ease of access to evidence is irrelevant given that this case will likely be resolved via cross-motions for summary judgment based on the administrative record. "Therefore, as in most environmental cases, the issue of which federal district should adjudicate the issues is determined by weighing a plaintiff's choice of forum against the competing interest in 'having localized controversies decided at home.'" *Ctr. for Biological Diversity & Pac. Env't v. Kempthorne*, No. 07-cv-00894, 2007 WL 2023515, at *5 (N.D. Cal. July 12, 2007) (quoting *Piper Aircraft Co. v. Reyno,* 454 U.S. 235, 241 n. 6 (1981)). *See also* Wright, Miller & Cooper, 15 Fed. Prac. & Proc. Juris. § 38454 (4th ed.) (noting "the local interest in having local controversies resolved at home, especially in environmental cases or other matters involving land").

A plaintiff's choice of forum is ordinarily given significant weight. "The defendant must make a strong showing of inconvenience to warrant upsetting the plaintiff's choice of forum." *Decker Coal Co. v. Commonwealth Edison Co.*, 805 F.2d 834, 843 (9th Cir. 1986). However, "[i]f the operative facts have not occurred within the forum of original selection and that forum has no particular interest in the parties or the subject matter, the plaintiff's choice is entitled only to minimal consideration." *Pac. Car & Foundry Co. v. Pence,* 403 F.2d 949, 954 (9th Cir. 1968). "This is true *even if* the plaintiff is a resident of the forum." *Chesapeake Climate Action Network v. Exp.-Imp. Bank of the U.S.*, No. 13-cv-03532, 2013 WL 6057824, at *2 (N.D. Cal. Nov. 15, 2013). *See also* Wright, Miller & Cooper, 15 Fed. Prac. & Proc. Juris. § 3848 (4th ed.) ("The plaintiff's preference may also be given less weight if the plaintiff sued in a district that has no obvious connection to the case . . . . [A]lthough not universally followed, this approach is one of sound judicial administration and reflects good common sense.").

Thus, the weight to be given to plaintiffs' chosen forum turns on what connections this District has to the facts, parties, and subject matter at issue in the case. Here, plaintiffs contend that this District has several relevant connections. First, plaintiff Sierra Club is headquartered in,

and thus resides in, this District. Second, several other plaintiffs have "close ties" to this District. CBD, NRDC, and Defenders all have offices here. Sierra Club, CBD, NRDC, Defenders, and Friends of the Earth each have thousands of members here. Third, the 2019 Rule directly affects the State of California given the existence of active oil and gas leases off the coast of Southern California. The revisions that it makes to the operation of those leases could result in oil spills, which would by definition spill into the coast off of the Northern District, and affect species that migrate up and down the California coast. Fourth and finally, the 2019 Rule, as part of the President's "America-First Offshore Energy Strategy," comes alongside a proposal to expand significantly the number of active leases—including off the coast of this District.

With these facts, plaintiffs have shown that the Northern District of California has an interest in the outcome of this litigation. This is not a case where the alleged harm will have a national impact, such that *no* district can claim an outsized interest in its outcome. *Cf. Alec L. v. Jackson*, No. 11-cv-02203, 2011 WL 8583134, at *3 (N.D. Cal. Dec. 6, 2011). Rather, this is a case where a handful of districts, the Northern District of California included, have particularized interests. That a plaintiff's chosen forum must have some particularized interest in the litigation to be accorded deference does not imply that only one such forum can exist. Thus, plaintiffs' choice to bring their lawsuit in this District will be accorded more-than-minimal deference.

Ultimately, however, defendants have convincingly argued that the Eastern District of Louisiana's ties to this litigation meet their burden. Almost all active OCS oil and gas leases are in the Gulf of Mexico: nearly 2,500, as compared to 54 in Alaska and 34 in Southern California. Those leases are a substantial part of the Gulf states' economy: the region produces 98 percent of the nation's OCS oil and gas, and 70 percent of jobs sustained by OCS oil and gas activities go to Gulf state residents—with 16 percent going to Louisiana residents. *See Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 509 (1947) ("In cases which touch the affairs of many persons, there is reason for holding the trial in their view and reach rather than in remote parts of the country where they can learn of it by report only."). The challenged administrative process occurred substantially in BSEE's Gulf of Mexico Region office in the Eastern District of Louisiana. *See Gulf Restoration*

United States District Court
Northern District of California

ORDER GRANTING MOTION TO TRANSFER
CASE NO. 19-cv-03263-RS

5

*Network v. Jewell*, 87 F.Supp.3d 303, 313 (D.D.C. 2015) ("In APA cases, courts generally focus on where the decisionmaking process occurred to determine where the claims arose." (internal citation and quotations omitted)). Some of the drilling techniques and equipment contemplated by the 2019 Rule are *only* used in the Gulf of Mexico, not other drilling regions.

In comparison, this District's ties, discussed above, are weaker. That plaintiff Sierra Club resides in this District and other plaintiffs have a presence here does not relate to this litigation in particular. All active California oil and gas leases implicated by the 2019 Rule are off the coast of *Southern* California. New leases in Northern California are certainly a possibility—but they are far from a certainty as the facts currently stand. *Cf. Da Cruz v. Princess Cruise Lines, Inc.*, No. 00-cv-00867, 2000 WL 1585895, at *3 (N.D. Cal. Oct. 12, 2000) ("[T]he state of the facts at the time the complaint was filed are the operative facts for determining venue."). Thus, while the 2019 Rule applies, nationally on its face, its effects will be felt most immediately and acutely in the Eastern District of Louisiana. Whatever ties this District may have to the litigation, and whatever deference plaintiffs' choice is due, are dwarfed by the Eastern District of Louisiana's interest in "having localized controversies decided at home." *See Piper Aircraft*, 454 U.S. at 241 n. 6. *See also Sierra Club v. U.S. Dep't of State*, No. 09-cv-04086, 2009 WL 3112102, at *3 (N.D. Cal. Sept. 23, 2009) ("[E]nvironmental cases often provide a particularly strong basis for finding a localized interest in the region touched by the challenged action.").

## V.  CONCLUSION

For the reasons set forth above, this case is transferred to the District Court for the Eastern District of Louisiana.

**IT IS SO ORDERED**.

Dated: November 26, 2019

RICHARD SEEBORG
United States District Judge

ORDER GRANTING MOTION TO TRANSFER
CASE NO.  19-cv-03263-RS

6

United States District Court
Northern District of California